UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL ESTEVEZ, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>-against-<br><br>ALMA REALTY CORP., and 100 MAIN STREET REALTY LLC,<br><br>Defendants. | Case No.: 1:25-cv-8560-PAE-BCM<br><br>**AMENDED COMPLAINT**<br>**CLASS AND COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ANGEL ESTEVEZ ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, as and for his AMENDED COMPLAINT against Defendant ALMA REALTY CORP. ("ALMA"), and 100 MAIN STREET REALTY LLC ("Main Street") (collectively, "Defendants"), states as follows:

## NATURE OF THE CASE

1. This is a civil action for damages and equitable relief based upon willful violations that the Defendants committed of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); and (iv) any other claim(s) that can be inferred from the facts set forth herein.

## JURISDICTION, AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*., 42 U.S.C. § 1981, and 42 U.S.C. § 2000e, *et seq*. The

supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

3. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(3), as the majority of buildings that Defendants manage are located in this district, and therefore, a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

4. At all times relevant herein, Plaintiff ANGEL ESTEVEZ was and is a resident of the State of New York and was an "employee" entitled to the protections as defined in the FLSA and the NYLL.

5. At all times relevant herein, Defendant ALMA REALTY CORP. was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, with its principal place of business located at 31-10 37th Ave, Suite 500, Long Island City, NY 11101.

6. At all times relevant herein, Defendant 100 MAIN STREET REALTY LLC was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with its principal place of business located at 31-10 37th Ave, Suite 500, Long Island City, NY 11101.

7. At all relevant times herein, Defendants were and are "employers" within the meaning of the FLSA and NYLL. Defendants were responsible for setting Plaintiff's hours and compensation, directing his day-to-day activities, supervising his performance, and maintaining Plaintiff's employment records.

8. Defendants are joint employers who jointly managed, supervised, hired, and controlled Plaintiff's compensation, and are jointly and severally liable in this matter.

9. At all relevant times herein, Defendants were "employers" within the meaning of the FLSA and NYLL. Additionally, Defendants' qualifying annual business exceed and exceeds $500,000.00, Defendants employed and employ two or more people, and Defendants were and are engaged in interstate commerce within the meaning of the FLSA, as Defendants managed residential and commercial properties throughout New York City and Long Island, accepted checks and credit card payments as a form of payment based on banking agreements with out-of-state companies, and purchased and used tools and supplies that traveled across state lines on a daily basis in the course of providing its services, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

10. Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on his own behalf, as well as on behalf of those in the following collective:

> All current and former non-exempt as non-residential building superintendents (or in similar positions) employed by Defendants during the applicable FLSA limitations period, performed any work for Defendants, and who elect to opt-in to this action ("FLSA Plaintiffs").

11. Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

12. At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet Defendants purposefully and willfully chose and chooses not to do so.

13. The precise number of FLSA Plaintiffs should be readily available from a review of Defendants' personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

14. Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay its employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

15. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All current and former non-exempt non-residential building superintendents (or in similar positions) employed by Defendants in New York since the date six (6) years prior to the filing of the initial Complaint (the "Class Period"), who were subject to Defendants' centralized timekeeping and payroll system.

16. Excluded from the NYLL Class are Defendants' officers, directors, and managerial employees with authority over payroll practices.

17. All said persons are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts from which to calculate that number are presently within the sole control of Defendants, upon information and belief, there are no less than 40 members in the Class.

19. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

20. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' companywide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

21. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests adverse to the Class. Plaintiff is represented by attorneys who are experienced and competent in employment and wage and hour litigation and class action litigation and have many times previously represented plaintiffs in wage and hour cases.

22. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

23. Because the losses, injuries, and damages suffered by each of the individual Class members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

24. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

25. Absent class treatment, many employees would likely be unable to vindicate their rights due to the relatively modest size of individual claims compared to the cost of litigation.

26. Concentrating the litigation in a single forum promotes judicial economy and avoids inconsistent results.

27. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a. Whether Defendants unlawfully failed to compensate Class members at the applicable overtime rate for hours worked over forty (40) hours per week;

b. Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

c. Whether Defendants failed to pay Plaintiff and the Class overtime compensation for all hours worked in excess of forty (40) hours per week;

d. Whether Defendants' electronic timekeeping system restricted compensable time to scheduled shift parameters;

e. Whether Defendants automatically deducted one-hour meal periods regardless of whether they were taken;

f. Whether these timekeeping practices resulted in uncompensated work time;

g. Whether payroll processing based on that system caused underpayment of overtime wages;

h. Whether Defendants unlawfully failed to provide Class members with accurate wage statements in violation of NYLL § 195(3);

i. Whether Class members are entitled to damages, and if so, the means of measuring such damages;

j. Whether Defendants are liable for Class members' attorneys' fees and costs; and

k. Whether Defendants are liable for liquidated damages.

## STATEMENT OF FACTS

**Plaintiff's Specific Allegations**

28. Defendants employed Plaintiff from in or around April 2015 until on or around November 11, 2025.

29. Throughout his employment, Plaintiff worked for Defendants as a building superintendent of non-residential buildings that Defendants managed.

30. As a superintendent, Plaintiff's duties included building maintenance and repairs; responding to tenant complaints; handling plumbing, heating, and electrical issues; coordinating contractors; addressing alarm activations; and responding to building emergencies.

31. Plaintiff was regularly scheduled to work six (6) days per week: Monday through Friday from 6:30 a.m. to 4:00 p.m., and Saturdays from 7:00 a.m. to 1:00 p.m., totaling approximately 53.5 scheduled hours per week.

32. Although Plaintiff was scheduled for 53.5 hours, Defendants automatically deducted one (1) hour per day for a meal period, totaling six (6) hours per week, regardless of whether Plaintiff received an uninterrupted meal break. Plaintiff did not receive uninterrupted one-hour meal breaks and regularly worked through those periods.

33. For example, during the workweek of July 7, 2025 through July 13, 2025, Plaintiff worked his full scheduled shifts and did not receive uninterrupted meal breaks. In addition, Plaintiff worked until 6:30 p.m. on July 7, 2025; until 5:13 p.m. on July 8, 2025; and until 5:19 p.m. on July 9, 2025, performing building maintenance and responding to tenant and operational issues.

34. The additional time worked on those dates totaled approximately five (5) hours and two (2) minutes.

35. In total, Plaintiff worked approximately fifty-eight (58) hours and two (2) minutes that week.

36. Because Defendants automatically deducted six (6) hours for meal periods and restricted Plaintiff from recording the additional five (5) hours and two (2) minutes worked outside scheduled shifts, Plaintiff was not compensated for at least eleven (11) hours and two (2) minutes worked in excess of forty (40) hours during that week.

**<u>On-Call and After-Hours Restrictions</u>**

37. In addition to his scheduled hours, Plaintiff was required to remain on-call and respond to building emergencies outside his scheduled shifts, including burst pipes, plumbing failures, HVAC issues, and alarm activations.

38. Defendants' timekeeping system did not permit Plaintiff to clock in outside his scheduled shift hours. If Plaintiff attempted to clock in after hours, the system rejected the punch.

39. Nevertheless, Defendants required Plaintiff to perform this after-hours emergency work.

40. As a result, Plaintiff worked approximately fifteen (15) additional overtime hours per month for which he was not compensated.

**<u>Rounding and Time Adjustments</u>**

41. Defendants' timekeeping system automatically adjusted recorded time to match scheduled shift parameters.

42. Thus, when Plaintiff clocked in early, his time was rounded forward to his scheduled start time.

43. Likewise, when Plaintiff clocked out after his scheduled end time, his recorded time was adjusted backward to the scheduled end time.

44. However, if Plaintiff clocked in late, he was paid only from the actual clock-in time.

45. This system systematically reduced compensable hours worked in excess of scheduled shift times.

**Automatic Meal Deduction**

46. Defendants timekeeping system automatically deducted one (1) hour per day for a meal break from Plaintiff's recorded time.

47. Plaintiff was frequently unable to take an uninterrupted one-hour meal break due to job demands.

48. Defendants maintained no mechanism for employees to report missed or interrupted meal breaks.

49. Even when Defendants knew Plaintiff worked through meal periods, they continued to deduct one hour per day.

50. Defendants' clock-in restrictions, rounding practices, and automatic meal deductions were programmed into Defendants' electronic timekeeping system and applied uniformly to non-exempt employees.

51. Because these practices arose from a centralized timekeeping and payroll system, Defendants' practices and policies affected non-exempt employees in the same manner.

**Wage Statements**

52. NYLL § 195(3) requires employers to furnish employees with accurate wage statements listing, among other things, the total hours worked, regular rate of pay, overtime rate of pay, number of regular hours worked, number of overtime hours worked, and gross wages earned.

53. Defendants furnished Plaintiff with wage statements that reflected only scheduled

shift hours, less automatically deducted meal periods.

54. The wage statements did not reflect:

a. Hours worked responding to after-hours emergencies;

b. Time worked before scheduled shifts;

c. Time worked after scheduled shifts;

d. Missed or interrupted meal periods.

55. Because Defendants' timekeeping system restricted punches outside scheduled hours and automatically deducted one-hour meal periods, Plaintiff's wage statements understated his total hours worked and overtime hours worked.

56. As a result, the wage statements failed to accurately list the total hours worked and overtime hours worked in violation of NYLL § 195(3).

57. These violations occurred with each wage payment throughout Plaintiff's employment.

58. In addition to his scheduled hours, Plaintiff was on-call and expected to respond to emergencies outside of his regular schedule. Plaintiff was frequently required to respond, and did respond, outside of his scheduled hours to emergencies such as when a pipe burst in the building; the building experienced plumbing issues; tenants complained about heating or cooling issues within the building; or when the fire or security alarms were activated. Defendants clock-in system prevented Plaintiff from clocking in after hours. As a result of these issues, Plaintiff typically worked fifteen hours each month of additional overtime that Defendants failed to compensate.

59. In addition to not compensating Plaintiff for his work performed while on-call, Defendants' timekeeping system would deduct compensable clock-in time from Plaintiff's hours. If Plaintiff clocked-in early for his scheduled shift, Defendants would round his time up to his

scheduled time. However, if Plaintiff clocked in after his scheduled start of shift, Defendant would pay from the time when he clocked in, and not from the time his shift was scheduled to start. Likewise, if Plaintiff clocked out after the time his shift was scheduled to end, Defendants would adjust his time down to his scheduled end time.

60. Defendants' clock-in and clock-out rounding scheme applied to Plaintiff was a common policy that Defendants applied to all employees, including the opt-in FLSA Plaintiffs and the Class.

61. Further, Defendants also automatically deducted a one (1) hour meal break from all employees, regardless of whether they were actually able to take this break. Defendants employed no mechanism to track whether meal breaks were taken by Plaintiff, opt-in FLSA Plaintiffs, and the Class, or how long such breaks lasted. Even on days when Defendants knew that employees were working through their meal breaks and, as a result, did not take them, Defendants still automatically deducted one hour from their shifts.

62. Despite the lack of a lunch break, Defendants automatically unlawfully deducted one (1) hour from the compensable time for Plaintiff, opt-in FLSA Plaintiffs, and the Class.

63. Thus, through this automatic unlawful one-hour deductions, Defendants failed to compensate, Plaintiff, opt-in FLSA Plaintiffs, and the Class for all hours worked, including those hours over forty.

64. Throughout his employment, Defendants paid Plaintiff hourly rate, which by the end of his tenure had increased to $22.50 per week. While Defendants compensated Plaintiff for some of his overtime hours at time and one-half his regular rate, as a result of their unlawful payroll practices, Defendants failed to compensate Plaintiff for hours that he worked over forty (40).

65. Despite working these additional overtime hours, Defendants failed to compensate

Plaintiff one and one-half times his regular rate for all hours worked over forty.

66. FLSA Collective Plaintiffs and Class Members were assigned similar shifts and schedules, and similarly worked hours in excess of those schedules which went uncompensated.

67. As a result of Defendants' unlawful payroll practices, Plaintiff, FLSA Collective Plaintiffs and Class Members were not paid for all hours worked.

**Factual Allegations Common to Plaintiff, FLSA Plaintiffs, and the Class**

68. Defendants required Plaintiff, FLSA Plaintiffs, and the Class to clock in and out using an electronic timekeeping system.

69. Although employees regularly worked more than forty (40) hours per week, Defendants engaged in a pattern and practice of "time shaving" that included, *inter alia*, reducing, altering, or deleting recorded work hours to avoid paying overtime compensation required by the FLSA and the NYLL.

70. Specifically, Defendants:

a. Automatically deducted a one-hour break regardless of whether employees were relieved of duty;

b. Rounded time entries in a manner that systematically favored the employer;

c. Required off-the-clock work before clock-in and after clock-out;

d. Reduced overtime hours reflected in payroll records prior to paycheck issuance.

71. These alterations were made systematically and by managers and/or payroll personnel and were not initiated by employees.

72. Employees were not informed of these reductions, nor were they given an opportunity to review or approve edits to their time records.

73. As a result of Defendants' time-shaving practices, Plaintiff, FLSA Plaintiffs and

the Class were not paid for all hours worked and were denied overtime compensation at one and one-half times their regular rate of pay for all hours worked over forty.

74. Plaintiff, FLSA Plaintiffs, and the Class were non-exempt employees who were entitled to be paid overtime wages equal to one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

75. Although Plaintiff, FLSA Plaintiffs, and the Class worked more than forty (40) hours per week during their employment, Defendants failed to pay Plaintiff, FLSA Plaintiffs, and the Class for overtime wages equal to one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

76. As a result of their unlawful payroll practices, Defendants further failed to furnish to Plaintiff and the Class, with each wage payment, an accurate statement listing their total compensation, and the number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime under the FLSA*

77. Plaintiff and the opt-in FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

78. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay, or one and one-half the minimum wage rate, if greater, for all hours worked exceeding forty in a workweek.

79. As described above, during the relevant period, Defendants were "employers" within the meaning of the FLSA, while Plaintiff and the opt-in Plaintiffs were "employees" within the meaning of the FLSA.

80. As described above, Plaintiff and the opt-in FLSA Plaintiffs worked in excess of forty hours per week, during their employment with Defendants.

81. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff and the opt-in FLSA Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) in a week.

82. As a result of Defendants' violations of the law and failure to pay Plaintiff and the opt-in FLSA Plaintiffs the required overtime wages, Plaintiff and the opt-in FLSA Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

83. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff and opt-in FLSA Plaintiffs are entitled to liquidated damages in an amount equal to no more than one hundred percent (100%) of their unpaid wages.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT**
*Unpaid Overtime under the NYLL and the NYCRR*

84. Plaintiff, opt-in FLSA Plaintiffs, and the Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

85. N.Y. Lab. Law § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay, or one and

one-half times the minimum wage rate, if greater, for all hours worked exceeding forty in a workweek.

86. Throughout the relevant period, Defendants were and are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff, opt-in FLSA Plaintiffs, and the Class were and are "employees" within the meaning of the NYLL and the NYCRR.

87. Plaintiff, opt-in FLSA Plaintiffs, and the Class regularly worked in excess of forty (40) hours in a workweek, during their employment with Defendants.

88. Throughout the relevant period, Defendants knowingly failed to pay Plaintiff and the Class Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

89. As a result of Defendants' violations of the law and failure to pay Plaintiff, opt-in FLSA Plaintiffs, and the Class the required overtime wages, Plaintiff, opt-in FLSA Plaintiffs, and the Class have been damaged and are entitled to recover from Defendants all overtime wages due, along with reasonable attorneys' fees, interest, and costs.

90. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff, opt-in FLSA Plaintiffs, and the Class are entitled to liquidated damages in an amount equal to no more than one hundred percent (100%) of their unpaid wages.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANT**

*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

91. Plaintiff and the Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

92. N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

93. Defendants are "employers" within the meaning of the NYLL, while Plaintiff and the Class are "employees" within the meaning of the NYLL and the NYCRR.

94. Throughout the relevant time period, Defendants failed to furnish to Plaintiff and the Class with each wage payment, a statement accurately listing: their regular and overtime rates of pay and basis thereof; the total number of regular and overtime hours they worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

95. By failing to provide Plaintiff and the Class with accurate wage statement as required by NYLL §§ 195(3), Defendants deprived Plaintiff and the Class of their statutory rights to be provided with complete and accurate information about the terms and conditions of their compensation, including their correct regular rates of pay, correct overtime rate, the amount of compensation paid for regular work hours, and the amount of compensation paid for overtime hours.

96. Defendants' failure to provide Plaintiff and the Class with such information caused Plaintiff and the Class to endure uncertainty regarding their wages and hindered their ability to take action to correct Defendants' wage and hour violations as Defendants deprived Plaintiff and the Class of the means to confirm that they were being compensated in accordance with the terms of their employment and with the requirements of federal and state law.

97. Had Plaintiff and the Class been provided with such information, Plaintiff and the Class would have been certain that they were being paid incorrectly and Plaintiff would have

addressed the issue with Defendants in order to be timely paid his correct wages. Instead, Plaintiff and the Class were deprived of wages every pay period and have not been properly compensated to date.

98. As a result, Defendants injured Plaintiff and the Class by denying them the right to complete and accurate information about the terms of their compensation, which resulted in the underpayment of their wages

99. As Defendants failed to provide Plaintiff and the Class with wage statements as required by NYLL § 195(3), Plaintiff and the Class are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

**JURY DEMAND**

100. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, FLSA Plaintiffs, and the Class demand judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against Plaintiff and/or FLSA Plaintiffs for participation in any form in this litigation;

d. Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e. Designation of Plaintiff and his counsel as collective and class representatives under the FLSA and FRCP 23;

f. All damages that Plaintiff, FLSA Plaintiffs and the Class have sustained as a result of Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiff, FLSA Plaintiffs and the Class would have received but for Defendants' unlawful payment practices;

g. Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

h. Awarding Plaintiff, FLSA Plaintiffs and the Class their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiff;

i. Awarding Plaintiff with a service award for his role as collective and class representative and in recognition for his dedication to the FLSA Plaintiffs and the Class and his willingness to come forward as the lead Plaintiff on behalf of the FLSA Plaintiffs and the Class;

j. Pre-judgment and post-judgment interest, as provided by law;

k. Granting Plaintiff, FLSA Plaintiffs, and the Class such other and further relief as this Court finds necessary and proper.

Dated: February 10, 2026
New York, New York

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: ______________________
Caitlin Duffy, Esq. (CD 8160)
*Attorneys for Plaintiff and the Putative Collective and Class*
825 Third Ave., Suite 2100
New York, New York 10022
(212) 227-5700
caitlin@employeejustice.com